# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

KENNETH E. WHITE,

       Plaintiff,

v.                                              CV-07-J-1470-S

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.

## MEMORANDUM OPINION

Pending before the court is the plaintiff's appeal of the final decision of the Commissioner of Social Security denying the plaintiff disability benefits and supplemental security income.

On January 23, 2004, the plaintiff filed applications for disability benefits and supplemental security income (R. 56, 306). The state agency denied the plaintiff's applications and the plaintiff requested a hearing before an administrative law judge ("ALJ") which was held on November 16, 2005 (R. 320). The ALJ found that the plaintiff was capable of performing work available in significant numbers in the national economy and thus that the plaintiff was not disabled (R. 26-27). The plaintiff appealed the ALJ's decision to the Appeals Council (R. 15-17). The

Appeals Council denied the plaintiff's request for review making the ALJ's decision the final decision of the Commissioner of Social Security (R. 11).

The court has considered the record and briefs of the parties. For the reasons set forth herein, the decision of the Commissioner is due to be **REVERSED**.

## Factual Background

The plaintiff was born on December 31, 1970, and alleges that he has been disabled since April 14, 2001, from lower back problems (R. 56). The plaintiff has a tenth grade education and is able to read and write (R. 336).

The plaintiff was injured in November of 2001 while working as a laborer for Cheney Lime & Cement Company (R. 66, 134). The plaintiff's duties involved measuring lime and dust levels on silos, operating controls to load trucks, washing off equipment and work areas, and general labor (R. 66). At the time of his injury, the plaintiff had worked for Cheney for approximately two months[1] (R. 66).

The plaintiff injured his back while attempting to clean an underground scale (R. 214). An MRI revealed that the plaintiff had a herniated disc at L4, L5,

---

[1] The plaintiff had in fact worked for Cheney for a total of three years on three separate occasions (R. 66).

2

and S1 (R. 214). He initially saw Dr. Carter, a family physician, who believed he had a herniated disc (R. 67). He was referred to Dr. Roberts, a company physician, who recommended physical therapy (R. 67, 215). The physical therapy afforded no relief to the plaintiff, so he was referred to Dr. Weaver, an orthopedic surgeon (R. 67, 215).

Due to lack of improvement, the plaintiff requested a second opinion and was subsequently referred to Dr. Kezar, a physical medicine and rehabilitation specialist (R. 67). Dr. Kezar recommended that the plaintiff undergo a lumbar epidural steroid injection, resume physical therapy, and modify his duties at work (R. 67). Eventually, the plaintiff was referred to Dr. Beretta, who did the epidural steroid injection in March 2001 and performed a laser lumbar discectomy in early April 2001 (R. 67, 142, 151). This was apparently of minimal benefit to the plaintiff as he was subsequently referred to Dr. Theiss, an orthopedic surgeon, for another assessment (R. 67). Dr. Theiss found that the plaintiff had residual disc protrusion at L4-5 and L5-S1, but felt that further surgery would be of no benefit (R. 67). Dr. Theiss diagnosed the plaintiff with degenerative disc disease and told the plaintiff that it was unlikely that he would get much better (R. 215).

On June 27, 2001, a Functional Capacity Evaluation ("FCE") was performed on the plaintiff (R. 67). According to the evaluation, the plaintiff was

capable of occasionally lifting up to ten pounds (R. 67). The plaintiff was also limited to the occasional level for other activities including standing, sitting, stair and ladder climbing, stooping, kneeling, and squatting (R. 67-68). The evaluation found that the plaintiff could reach overhead and walk at a frequent level (R. 68). No limitation was placed on the plaintiff's ability to reach forward (R. 68). According to the evaluator, the plaintiff was inconsistent during the evaluation and was focused on his pain and discomfort (R. 68). Finally, the evaluator found that the plaintiff would be limited to the sedentary to light levels of work (R. 68).

On July 2, 2001, Dr. Kezar stated that the plaintiff had reached maximum medical improvement and assigned him a 10% permanent partial disability rating to the body as a whole (R. 63, 67). Dr. Kezar further stated that the plaintiff could perform light work (R. 67).

Following his injury, the plaintiff filed a claim for workers' compensation against Cheney Lime & Cement Company (R. 62). As part of the processing of his claim, the plaintiff was evaluated by Eddie Rice, a vocational and rehabilitation consultant (R. 65-69). Rice administered the Wide Range Achievement Test (WRAT3) to the plaintiff (R. 66). The plaintiff performed reading at an eighth grade level, spelling at a sixth grade level, and math at a seventh grade level (R. 66). According to his analysis, Rice found that the

plaintiff would have a 60% loss of access to occupations and a 56% loss of earning capacity (R. 68). Based on these factors, Rice concluded that the plaintiff would have a vocational disability rating within a range of 43% to 56% (R. 68). The plaintiff and Cheney Lime & Cement Company settled the plaintiff's workers' compensation claim for $45,000.00 leaving future medical benefits open (R. 71).

In December of 2001 the plaintiff was referred to the Pain and Rehabilitation Institute by Dr. Kezar (R. 214). The plaintiff was seen by doctors at the Pain and Rehabilitation Institute on a regular basis until May of 2004 (R. 173). During that time, the plaintiff reported pain from 5/10 to 10/10 (R. 173-218). To treat the plaintiff's injuries, a TENS unit was used as well as prescription medications (R. 191-212). The plaintiff was initially prescribed Klonopin and Vicoprofen for his injuries (R. 212). On March 6, 2002, the plaintiff reported that the Klonopin made him feel drunk, so his prescription was cut in half (R. 208). At a visit on April 29, 2002, the plaintiff complained of headaches and diarrhea (R. 204). As a result of these complaints, the plaintiff's Vicoprofen prescription and Klonopin prescription were discontinued and he was started on morphine sulfate (R. 205). In addition, the plaintiff was prescribed Ambien to help him sleep (R. 205). A prescription of MS-IR was given to the plaintiff at a visit on May 14, 2002 (R. 203). On September 23, 2002, the plaintiff's morphine sulfate

prescription and MS-IR prescription were discontinued (R. 196). The plaintiff was started on Elavil and Norco and was also given Klonopin again (R. 196). At his following visit, it was noted that the plaintiff's diarrhea had resolved secondary to the discontinuation of morphine (R. 193). The plaintiff was also started on a prescription of Neurontin (R. 194). On December 26, 2002, the plaintiff was also prescribed Flexeril (R. 191-92).

According to the record, the plaintiff's next visit to the Doleys Clinic was on March 20, 2003 (R. 189). The plaintiff reported that he was doing "somewhat better," but that his current pain was still 7/10 (R. 189). The plaintiff described the pain as a constant, burning, sharp, stabbing, and shooting type of pain (R. 189). The physical examination of the plaintiff revealed tenderness throughout the lumbar spine, with increased paraspinal muscle tightness noted throughout (R. 189). In addition, the plaintiff had decreased range of motion in all planes of motion in the lumbar spine (R. 189). The plaintiff complained of no side effects from his medications and all of his medications were refilled (R. 189-90).

The plaintiff returned to the Doleys Clinic on July 22, 2003 (R. 187). The plaintiff reported that his current pain was a 6/10 and that his pain had remained about the same since his last visit (R. 187). The physical examination again revealed tenderness in the plaintiff's lumbar spine as well as decreased range of

motion (R. 187-88). Additionally, the plaintiff's deep tendon reflexes were rated at 2+/4+ (R. 188). The plaintiff visited the Doleys Clinic again on October 15, 2003 (R. 185). The report from that visit is nearly identical to the report from the plaintiff's previous visit in July of 2003 (R. 185-86).

On January 14, 2004, the plaintiff was again examined at the Doleys Clinic (R. 183). The plaintiff reported that since his last visit he had experienced one episode of increased back pain where he could not walk or get up (R. 183). The plaintiff was taken to Shelby Baptist Medical Center because of the pain (R. 183). The plaintiff reported that his current pain was 8/10 (R. 183). At the plaintiff's next visit to the Doleys Clinic, he reported having new pain in the right side of his lower back and in his right hip (R. 180). The plaintiff stated that he went to Shelby Baptist Medical Center where the pain was treated with a shot of demerol (R. 180). The plaintiff described his current pain as being 10/10 (R. 180). The plaintiff also complained of diarrhea and shortness of breath (R. 180). In addition, the plaintiff stated that he was sleeping 0 hours per night (R. 180). The plaintiff also visited the Doleys Clinic on April 30, 2004, May 18, 2004, and May 25, 2004 (R. 173-79). The reports from those visits are substantially similar to the reports from the plaintiff's previous visits to the Doleys Clinics.

On April 12, 2004, a disability evaluation was performed on the plaintiff by

Dr. Lata Patil (R. 134). Dr. Patil's evaluation of the plaintiff's cervical spine revealed no deformities or spasms (R. 135). In addition, the plaintiff's cervical spine had normal range of motion and no tenderness (R. 135). Dr. Patil's examination of the plaintiff's upper extremities revealed no subluxation, crepitance, or skin changes (R. 135). The deep tendon reflexes, however, were rated at 3+ bilaterally (R. 135). The remainder of Dr. Patil's examination of the plaintiff's upper extremities revealed that the plaintiff's arm, hand, and fingers were normal, his muscle strength was 5/5 and his range of motion was limited only in his shoulder (R. 135). Dr. Patil's examination of the plaintiff's dorsolumbar spine revealed tenderness in the lumbar spine and I joint area on the right side as well as limited range of motion (R. 137). Dr. Patil next examined the plaintiff's lower extremities (R. 138). Dr. Patil notes that all active and passive movement of the plaintiff's lower extremities is painful at the hip and joint area (R. 138). Dr. Patil's diagnosis and summary of the plaintiff's impairments states that the plaintiff has a traumatic herniated disc, chronic lower back pain, and limited lumbar range of motion (R. 139). Based on his examination, Dr. Patil concluded that "the claimant's ability despite of him permanent [sic] to do the work related activity such as standing, walking, lifting, carrying, and traveling for long distances is limited, but I am sure he is able to do some of the activities while he is

sitting"[2] (R. 139).

On September 22, 2004, the plaintiff returned to the Doleys Clinic (R. 259). The plaintiff rated his pain at 8/10 and complained of headaches, vision changes, appetite change, and chest pain (R. 259). The examining physician notes for the first time that the plaintiff is allergic to morphine (R. 259). Apparently the morphine was causing the plaintiff to have diarrhea (R. 252). Upon physical examination, the plaintiff's deep tendon reflexes were rated at 2+/4+ (R. 260).

The plaintiff's next visit to the Doleys Clinic was on October 28, 2004 (R. 252). The plaintiff stated that his current pain was 8/10 and he also complained of nausea and diarrhea (R. 252). During the physical examination the examining physician noted that the plaintiff ambulated with a slow, slightly antalgic gait (R. 253). The physician also noted that the plaintiff expressed a lot of difficulty going from a seated to a standing position (R. 253). On November 22, 2004, the plaintiff returned to the Doleys Clinic for evaluation (R. 248). The plaintiff described his current pain as 5/10 (R. 248). This report states for the first time that the plaintiff is also allergic to Roxicodone and that the Roxicodone caused the plaintiff headaches (R. 248).

On November 30, 2004, the plaintiff was examined by Dr. Carter S. Harsh

---

[2] It is unclear to the court how the plaintiff can stand, walk, carry, and travel while sitting.

of Neurosurgical Associates, P.C. (R. 269).  Based on his examination Dr. Harsh found that the plaintiff did have changes in his lumbar spine, but that surgery was unlikely to significantly improve his symptoms (R. 269).

The plaintiff visited the Doleys Clinic again on March 24, 2005 (R. 241).  The patient rated his current pain as 5/10 and reported only getting three hours of sleep per night (R. 241).  This report states that the plaintiff is allergic to Oxycodone, which caused headaches, and Duragesic, which caused itching (R. 241).  The plaintiff also visited the Doleys Clinic on May 19, 2005, July 14, 2005, and September 8, 2005  (R. 262, 266, 287).  The reports from these visits are substantially similar to the reports from the plaintiff's previous visits.

A hearing was held before an ALJ on November 16, 2005 (R. 320).  The ALJ received testimony from Dr. Arthur Brovender, a non-treating physician, on the plaintiff's condition (R. 323-36).  Dr. Brovender testified that the plaintiff's subjective complaints of pain were not supported by the objective medical evidence (R. 326).  Dr. Brovender further testified that the plaintiff was capable of sitting for two hours, standing for two hours, and walking for two hours during an eight hour workday (R. 327-28).  Thus, the plaintiff would not be precluded from performing work with a sit/stand option (R. 328).

Following Dr. Brovender's testimony, the plaintiff testified that he was able

to walk for approximately fifteen minutes, sit for one and a half hours, and stand for one and a half hours (R. 343-45).  The plaintiff stated that the heaviest thing that he was capable of carrying was a gallon of milk (R. 345).  When asked about his current pain, the plaintiff responded that it was six or seven out of ten with the medication (R. 345).

The final person to testify at the hearing was a vocational expert ("VE") (R. 350).  The ALJ presented the hypothetical scenario of a person who can lift and carry twenty pounds occasionally, stand for one and a half hours, sit for two hours, and walk for fifteen minutes at a time (R. 352).  In addition, the hypothetical person could never climb, crawl, or kneel, and his ability to push and pull in the upper extremities would be limited to frequently (R. 352).  Finally, reaching overhead would be limited to frequently and the person would have to avoid extreme cold, humidity, vibration, and heights (R. 352-53).  The VE stated that such a person would not be able to return to the plaintiff's past work, but that such a person could perform other work in the local or national economy (R. 353).  These jobs would include a surveillance security systems monitor, assembler, and inspector (R. 354, 356, 357).

The ALJ found that the plaintiff has the following severe impairments: chronic low back pain, right hip pain, and neck pain (R. 23).  The ALJ also found

that the plaintiff is unable to perform any of his past relevant work, that he is a "younger" individual, with a limited education, and has no transferable skills (R. 26). The ALJ further found that the claimant had the residual functional capacity for light work activity and that he could perform a significant range of light work (R. 26-27). Thus, the ALJ found that the plaintiff was not disabled (R. 27).

Following the ALJ's decision finding the plaintiff not disabled, the plaintiff appealed the decision to the Appeals Council (R. 15). On May 11, 2006, the Appeals Council denied the plaintiff's request for review (R. 11). On June 5, 2006, the plaintiff sent a report from April 5, 2006, from the Doleys Clinic to the Appeals Council as part of a request to reopen his case (R. 7-9). The report states that the plaintiff's current pain is 8/10 (R. 8). The report further states that the plaintiff is on medications and will be on medications for the foreseeable future (R. 8). The Appeals Council denied the plaintiff's request to reopen his case finding that the report did not constitute new and material evidence, correct a clerical error, or clearly show that the ALJ's decision was erroneous (R. 4).

## Standard of Review

This court's review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. §

405(g); *Wolfe v. Chater*, 86 F.3d 1072, 1076 (11th Cir. 1996); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence" is generally defined as "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

In determining whether substantial evidence exists, this court must scrutinize the record in its entirety, taking into account evidence both favorable and unfavorable to the Commissioner's decision. *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir.1988); *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987). Even if the court finds that the evidence weighs against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983); *see also Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984); *Martin*, 894 F.2d at 1529.

This court may not decide facts anew, reweigh evidence or substitute its judgment for that of the ALJ, even if the court finds that the weight of the evidence is against the Commissioner's decision. *Martin*, 894 F.2d at 1529. This court must affirm the decision of the ALJ if it is supported by substantial evidence.

*Miles*, 84 F.3d at 1400; *Bloodsworth*, 703 F.2d at 1239.  However, no such presumption of correctness applies to the Commissioner's conclusions of law, including the determination of the proper standard to be applied in reviewing claims.  *Brown v. Sullivan*, 921 F. 2d 1233, 1235 (11th Cir. 1991); *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).  Furthermore, the Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal."  *Cornelius*, 936 F.2d at 1145-1146.

## Discussion

In his opinion, the ALJ fails to give any weight to the opinion of the plaintiff's treating physician at the Doleys Clinic, Dr. Lisa Columbia.  The opinion of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary.  *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004); citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997).  The Eleventh Circuit Court of Appeals has concluded that "good cause" exists when the: (1) treating physician's opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.  *Id*.  When electing to disregard the opinion of a treating physician, the

14

ALJ must clearly articulate its reasons. *Id.* The ALJ commits reversible error if he fails to specify what weight is given to a treating physician's opinion and any reason for giving it no weight. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

The ALJ completely fails to state the weight that he gives to Dr. Columbia's[3] opinions. However, it can be assumed that the ALJ gave Dr. Columbia's opinions no weight since the ALJ concluded that the "findings were minimal involving the claimant's back and neck and he recovered from his soft tissue injuries without complications"(R. 24). The ALJ made this finding even though Dr. Columbia's records from treating the plaintiff for two and a half years clearly indicate that the plaintiff's lumbar spine is tender throughout and his range of motion is limited (*See, e.g.*, R. 189). The ALJ provided no reason, much less good cause, for why he chose to disregard the opinion of the plaintiff's treating physician. Therefore, the ALJ's finding that the plaintiff has the residual functional capacity to perform light work activity is not supported by substantial evidence.

The ALJ also discredits the plaintiff's allegations of disabling pain finding

---

[3] Dr. Lisa Columbia was the plaintiff's primary physician at the Doleys Clinic (*See, e.g.*, R. 182).

that they are exaggerated in order to bolster the plaintiff's claim (R. 23-24). The ALJ provides the following reasons for why he chose to discount the plaintiff's complaints of pain: (1) the plaintiff did not report any adverse side effects from his prescribed medications; (2) there is no indication that the plaintiff is incapable of performing a normal range of activities; (3) the plaintiff is able to perform most daily activities and can care for his personal hygiene without assistance; (4) there are no documents in the record to support the plaintiff's subjective complaints of severe pain (R. 23-24).

These reasons are not supported by substantial evidence. The first reason given by the ALJ that the plaintiff did not report any adverse side effects from his prescribed medications contradicts the testimony given by the plaintiff at the hearing as well as the extensive records from the Doleys Clinic describing numerous side effects that the plaintiff experienced. For example, at the hearing the plaintiff testified as follows:

> Q: All right. And you've been tried with various
> narcotic pain medicines for your condition?
> A: Yes, sir.
> Q: I believe you've been tried on morphine?
> A: Yes, sir.
> Q: Duragesic patch?
> A: Yes, sir.
> Q: And what else?
> A: Methadone.

> Q: Methadone.
> A: And methadose.
> Q: And you, you're not taking those medications at this time, right?
> A: No, sir.
> Q: You've had allergies to all of them?
> A: Yes, sir.
> Q: I think the duragesic patch made you itch?
> A: Yes, sir.
> Q: And you've had one that made you nauseous and gave you diarrhea?
> A: The morphine gave me diarrhea.
> Q: Okay.
> A: And the methadone gave me a severe headache.

(R. 340-41). If those are not adverse side effects then the court is unsure what would in fact constitute adverse side effects in the ALJ's opinion. Thus, the first reason provided by the ALJ for discounting the plaintiff's statements concerning his pain is not supported by substantial evidence.

The second and third reasons that the plaintiff is capable of performing a normal range of activities is also not supported by substantial evidence. The plaintiff testified at the hearing that he was unable to stoop, squat, sit, bend, or crawl because of his back pain (R. 343). Furthermore, the plaintiff testified that he has trouble climbing flights of stairs and that he cannot climb a ladder (R. 343). When asked about a normal day, the plaintiff testified that he could load the dishwasher but that he could not sweep or vacuum (R. 347). The plaintiff also

testified that the heaviest thing he can lift is a gallon of milk (R. 345). The plaintiff's testimony demonstrates that there are a wide range of normal activities that he is unable to perform because of his back.

The final reason provided by the ALJ is that the medical records do not support the plaintiff's complaints of severe pain. In providing this reason the ALJ fails to apply the three part pain standard developed by the United States Court of Appeals for the Eleventh Circuit. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Under this standard, the claimant must show evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged pain arising from that condition, or that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050 (11th Cir. 1986); *Landry*, 782 F.2d at 1152. If the ALJ decides not to credit such testimony, he must articulate explicit and adequate reasons for doing so. *Hale*, 831 F.2d at 1011. Failure to articulate the reasons for discrediting subjective pain testimony requires, as a matter of law, that the testimony be

accepted as true. *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir.1988); *Hale*, at 1054; *MacGregor*, 786 F.2d at 1054.

The decision by the ALJ contains no indication that he applied this standard. His findings contain only the bare conclusion that "[t]here are no documents in the record to support his subjective complaints of severe pain" (R. 23). However, the extensive medical records from the Doleys Clinic objectively demonstrate that the plaintiff suffers from chronic lower back pain (*See, e.g.*, R. 178). Furthermore, the medical expert who testified at the hearing stated that the plaintiff's complaints of pain were consistent with someone with the plaintiff's condition (R. 335). Thus, the three part pain standard was met using the testimony of the medical expert who testified on behalf of the defendant. Moreover, there is no evidence in any of the plaintiff's record which suggests that the plaintiff is exaggerating his complaint or that he is a malingerer. In fact, the evidence of record demonstrates that the plaintiff suffers from chronic lower back pain which is unlikely to improve. Therefore, the final reason provided by the ALJ for discounting the plaintiff's complaints of pain is also not supported by substantial evidence.

## Conclusion

When evidence has been fully developed and unequivocally points to a specific finding, the reviewing court may enter the finding that the Commissioner should have made. *Reyes v. Heckler*, 601 F.Supp. 34, 37 (S.D.Fla.1984). Thus, this court has the authority under 42 U.S.C. §405(g) to reverse the Commissioner's decision without remand, where, as here, the Commissioner's determination is in plain disregard of the overwhelming weight of the evidence. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *Bowen v. Heckler*, 748 F.2d 629, 636 (11th Cir.1984). Based on the lack of substantial evidence in support of the ALL's findings, it is hereby **ORDERED** that the decision of the Commissioner is **REVERSED.** This case is **REMANDED** to the Agency to calculate the plaintiff's monetary benefits in accordance with this Opinion.

   **DONE** and **ORDERED** the 20th day of June 2008.

   _____
   INGE PRYTZ JOHNSON
   U.S. DISTRICT JUDGE